CHARLES P. HESS, Appellant, v. JOHN P. POWELL, Respondent.

Kansas City Court of Appeals, February 20, 1888.

1. CONTRACT—PROMISE TO PAY ABSOLUTELY—WHETHER NOTICE RE-QUISITE IN SUCH CASE.—Where the instrument is an absolute promise to pay a certain amount (as in this case) with interest and costs ; in such a case no notice is required to be given of the failure of another party to make such payment.

2. —— LEVY UPON PERSONAL PROPERTY, IN GENERAL, IS A SATIS-FACTION—PRINCIPAL AND SURETY—CASE ADJUDGED.—In general, so far as the rights of third persons are concerned, whether they are sureties or the holders of junior liens, or otherwise interested in the discharge of the writ, the levy upon goods is a satisfaction of the judgment, to the extent of their value, unless plaintiff is deprived of the benefit of his levy, without any fault, neglect, or indulgence on his part, or on the part of the officer. But if the judgment was loaned by the judgment creditor to the surety of the judgment debtor to protect himself, and was so used, then the judgment creditor cannot be deemed to have made the levy or to have released it.

3. PRACTICE—INSTRUCTION—REFUSAL OF WHEN GROUND FOR REVERSAL. When an instruction is asked for and refused, as here, which involves essential matters, pleaded, produced in evidence, and at issue, such refusal is ground for reversal.

APPEAL from Macon Circuit Court, HON. ANDREW ELLISON, Judge.

*Reversed and remanded.*

Statement of case by the court.
This suit was upon the following instrument :

"Macon, Mo., Sept. 5, 1873.
"On or before Dec. 30, 1873, for value received, I promise to pay Melone & Epperson the sum of $130.00, with interest at 10 per cent., and all cost that may accrue and that has accrued, on a certain promissory note dated Sept. 30, 1872, signed by John P. Sidell and

John P. Powell, for $130.00, and due Dec. 30, 1872, in favor of Melone & Epperson ; upon this condition : that if said note shall be paid off and discharged by said John P. Sidell, then this obligation to be void ; otherwise to remain in full force.

" John P. Powell."

On the back is the following indorsement :

" For value received, we assign the within note and account to Charles P. Hess.

." Melone & Epperson."

The answer admitted the execution of the instrument and set up two special defences :

" 1.    That said Melone & Epperson had failed and neglected to notify defendant of Sidell's failure to pay the note mentioned within a reasonable time thereafter, as was their duty to do, by reason whereof the defendant was unable to protect himself and was thereby discharged and released from all liability to pay said conditional contract and costs accrued in the suit of *Melone & Epperson v. Sidell.*

" 2.    That on the original note defendant was only surety for Sidell, which was known to said Melone & Epperson ; that in 1873 said Melone & Epperson obtained judgment against said Sidell, the principal in said note, whereon an execution was issued and levied on a large amount of personal property, then owned by said Sidell, more than sufficient to satisfy and pay said judgment and all costs, and thereby establish a valid and subsisting lien on said property by reason of such levy ; that said Melone & Epperson either released said property from the lien of said execution, or negligently failed to have said property sold to satisfy said judgment and costs, and negligently permitted said property to be wasted and lost, and negligently failed to have and require the officer holding said execution to account for said property and pay said execution and judgment (as they might have done) until long after the bond of said officer had expired by limitation, whereby defendant

says he is discharged and released from all further liability to pay said debt and costs."

Charles P. Hess, plaintiff, in his own behalf, testified: "I am the owner of note sued on. Bought it for a valuable consideration of Melone & Epperson."

It was agreed by counsel that the following interrogatories to and answers of Charles G. Epperson might be read, and which were read accordingly:

Q. "Give the history of the note in suit, and how it came to be executed by John P. Powell? A. The note was executed by John P. Powell in place of one past due in favor of Melone & Epperson, and signed by Powell and Sidell jointly."

Q. "What arrangements or understanding did you have with Powell about the payment of the note by Sidell? A. None, other than that mentioned in the note."

Q. "What understanding, or agreement, if any, did you have with Powell in reference to discharging him from this note, and looking to the sheriff of Knox county for the debt? A. When the original note of Powell and Sidell fell due, Powell wanted us to sue Sidell alone for the amount. This we refused to do until he gave us the note sued on in this case, with the condition in it. We then sued Sidell in a justice's court, and failed to make the money. Then, at Powell's request, we got transcript to Knox county. This Powell took, to do the best he could with it towards saving himself. After this transcript to circuit court, Powell took charge of the matter, and it was understood that we had nothing further to do with it. Don't know if he collected anything. We did not look to Sidell for payment, and it was so understood by Powell."

Q. "State all you know, and what you did in trying to make the money out of Sidell on the original note? A. Never had any such arrangement or understanding. Had no transactions in regard to this matter afterwards. Powell told me once that he had levied on some corn; at another time that the sheriff had allowed

the corn to be moved; so he couldn't make the money, and talked of suing the sheriff. This we had nothing to do with, as we only looked to Powell for payment. Never relieved Powell from liability on this note; never released any property. It was Powell who undertook to make the money out of Sidell. He managed the whole thing, and tried to make the money out of Sidell to save himself. Never agreed to sue the sheriff of Knox county, and never knew what he did to be sued for; we looked to Powell only. All that was done to make money out of Sidell was done by Powell. Never knew what he did in the premises."

It may be stated for the purposes of this report that evidence was introduced for the defendant sufficient to support the following instruction given by the court of its own motion:

"It is admitted that Sidell did not pay off the note for which defendant was security when it fell due. The burden of proving that defendant is not liable for the debt and interest sued for is upon defendant, Powell. If the jury believe, from the evidence, that, after Melone & Epperson obtained judgment upon the original note against Sidell, they had transcript of same filed in circuit court, and ordered execution in hands of sheriff of Knox county, who, at their instance, or attorney's, seized and levied upon sufficient personal property of Sidell with which to pay it all off, and Sidell gave, at the time of the seizure, a delivery bond, binding himself to have said property upon the farm where it was seized upon at the expiration of a certain time, if the debt should not be paid, and that Sidell did have the property in compliance with the delivery bond, at the place and time called for, and the sheriff did not further execute it, but suffered the property to be removed and disposed of, and the lien of his execution to expire, and that defendant, Powell, in good faith believed the matter was all settled, and never had any notice that he was held for the debt till in August, 1882, at the institution of this suit, near ten years thereafter, then the jury should

find for defendant. But if the jury believe, from the evidence, the delivery bond was executed by Sidell, with Powell as security upon the same, agreeing therein to deliver the property seized at Edina, Mo., if the debt was not paid, and that neither Sidell nor Powell ever delivered same as called for therein, then the jury should find for plaintiff the debt, with ten per cent. interest from September 5, 1873, and also, for such costs as they believe, from the evidence, Melone & Epperson paid in the original suit of September, 1872."

. From a judgment in favor of the defendant the plaintiff has appealed to this court.

BERRY & THOMPSON, for the appellant.

I. The instrument sued on is a new contract, based upon a valuable consideration. It is the personal and absolute obligation of Powell to pay, conditioned only that Sidell pay the old note. There is no question here of guaranty or suretyship. No demand and notice were necessary. This paper was a special contract. 2 Daniel Neg. Inst. (2 Ed.) sec. 1303 ; *Airey v. Pearson*, 37 Mo. 424 ; *Wright v. Dyer*, 48 Mo. 526 ; *Carr v. Card*, 34 Mo. 513 ; *Koenig v. Bramlett*, 20 Mo. App. 636 ; *McMurray v. Noyes*, 72 N. Y. 524; *Nixon v. Beard*, 9 West. Rep. 658.

II. The consideration was sufficient. *Williams v. Jensen*, 75 Mo. 681 ; 1 Parsons on Notes and Bills, 175-198 ; *Brooks v. Ball*, 18 Johns. (N. Y.) 337 ; *Cook v. Bradley*, 7 Conn. 57 ; *Warner v. Booge*, 15 Johns. 233 ; *Carr v. Card*, 34 Mo. 513 ; *Hubon v. Park*, 116 Mass. 541 ; *Given v. Corse*, 20 Mo. App. 132 ; *Stillwell v. Aaron*, 69 Mo. 545 ; *Cass Co. v. Oldham*, 75 Mo. 50.

III. Treating the new contract as a guaranty, it is absolute, and Powell is bound to pay it. *Airey v. Pearson*, 37 Mo. 424 ; *Wright v. Dyer*, 48 Mo. 526 ; 2 Daniel on Neg. Inst. (2 Ed.) sec. 1769, p. 688 ; Brandt on Suretyship and Guaranty, sec. 170, p. 242 ; *Clay v. Edgerton*, 19 Ohio St. 549; *Osborne & Co. v. Lawson*, 26 Mo. App. 549.

IV.    The obligation sued on is plain and unambiguous, and the court erred in admitting the testimony of defendant, Powell, and Ennis, to change or vary its terms and legal effect.   *Smith's Adm'r v. Thomas*, 29 Mo. 307; *Inge v. Hance*, 29 Mo. 399; *Heimrachs v. Gehrke*, 56 Mo. 79; *Henshaw v. Dutton*, 59 Mo. 139; *Pearson v. Carson*, 69 Mo. 550; *Gardner v. Mathews*, 81 Mo. 627.

V.    Powell undertook to collect the judgment against Sidell.   This he might have done if he had not signed the forthcoming bond, and had permitted the sheriff to take the property into possession, and remove or secure it.   It would be inequitable to us to allow Powell to escape liability on this note because of his own interference with legal process for the collection of the judgment against Sidell.   Brandt on Suretyship and Guar., sec. 228, p. 321.

VI.    Melone & Epperson directed no levy on any property; nor did they release, or cause to be released, any property from the levy.   They had no lien or claim, absolute or otherwise, on any property of Sidell's, to be discharged from the levy.   Brandt, *supra*, sec. 374, pp. 503-504.   Property levied upon must be subject to execution, to make creditor's right absolute.   Brandt, *supra*, sec. 378, p. 509.

VII.    The sheriff was acting at Powell's direction. It was Powell's own business to see that the sheriff was at the place of sale on the day of sale, to sell the property, and the sheriff's default could not prejudice us.   *Griff v. Steamboat*, 12 La. An. 8; *Summerhill v. Trapp*, 48 Ala. 363.

DYSART & MITCHELL, for the respondent:

I.    The execution of the new instrument was not an independent but a collateral undertaking of Powell.   He was already held as a maker on the note, and as surety for Sidell.   There was no proof that the new instrument was accepted in payment and discharge of Powell's obligation on the note.   To have that effect there must

have been an express understanding to that effect. But Melone & Epperson retained the note, and nothing in the new undertaking or in the evidence tends to show that Powell was released as a surety on the note. Hence both instruments were in force, the note and new undertaking, the latter collateral to the first. It is true the second instrument modifies Powell's obligation on the note. It extends the time of payment as to him until December 30, 1873, and makes him liable, in addition to the note and interest, for all costs of the legal proceedings then instituted against the principal, and then by legal implication undertakes that Powell shall have reasonable notice of the non-payment of the debt by the principal. This inference follows necessarily, as such non-payment is a matter that would be peculiarly within the knowledge of the creditor, and might not be known for long years by the surety.

II. Now, if Powell continued as surety for the debt, and Melone & Epperson released the lien, either voluntarily or by negligence, then he is discharged to the extent of such loss, by the plainest and most elementary principles of law. Whenever a surety pays the debt of his principal, he is entitled to all liens and other securities held by the creditor against the principal. And if they are given up, relinquished, or lost by the creditor, so that the surety does not get the benefit thereof, then the surety, who is favored in law, shall be credited with the value of such liens and securities. And in this case, the property lost was sufficient to pay the whole debt.

III. But if Powell had been a stranger to the debt so secured, signing the instrument sued on for a sufficient consideration, then he would be simply and purely a guarantor, and the instrument would be a guaranty. And in that event he (Powell) would be entitled to evoke in his aid all the principles of law applicable to an ordinary surety; besides he would have been entitled

to notice of non-payment by the principal debtor within a reasonable time after default. 1 Bouvier's Law Dict. 570; 2 Parsons on Contracts [5 Ed.] chap. 7, title, Guaranty or Suretyship, p. 3; 2 Sutherland on Damages, chap. 7, pp. 537, 548, 561, *et seq.*; 2 Parsons on Bills and Notes [2 Ed.] 117, 132; *Ferguson v. Turner*, 7 Mo. 497; *Priest v. Watson*, 75 Mo. 310, and cases cited; *Bank v. Matson*, 24 Mo. 333; *Rice v. Morton*, 19 Mo. 263; *Taylor v. Yeter*, 23 Mo. 244; *Lower v. Bank*, 78 Mo. 67-72; 2 Daniel on Neg. Inst., 700, 705; also 688, *et. seq.*; *Allen v. Rightman*, 20 Johns. 365; *Arents v. Commonwealth*, 18 Gratt. 770.; *Clay v. Edgerton*, 19 Ohio St. 533; *Wright v. Dyer*, 48 Mo. 525, and *Airey v. Pearson*, 37 Mo. 424, were decided upon the authority of *Allen v. Rightman*, 20 Johns. 365, *supra*, which is distinguishable. See note to Daniel on Neg. Inst., *supra*, 703. So are they distinguishable from the case at bar. *Bank v. Gaylord*, 34 Iowa, 248; 46 Iowa, 545.

IV. Plaintiff's position is that no defence is admissible in this case but that of payment. That the words of the instrument, *ex vi termini*, required the defendant to pay the amount mentioned, no matter what might be the conduct of Melone & Epperson as to Sidell and his property, would be treating the debt as due alone from Powell, and as though no obligation existed against Sidell. It would simply be ignoring the facts in the case and the relations shown to exist between the parties. Suppose, instead of taking the judgment and execution against Sidell, Melone & Epperson had taken a chattel mortgage on the same property, and had afterwards released it, or had negligently failed to record it, and thereby lost its benefits, could they still, notwithstanding, force Powell to pay the very debt so secured by the principal? The answer to this question also answers the question now under investigation.

V. The facts are plain. Here is a surety seeking to save himself. The legal proceedings and the under-

taking of defendant are evidently parts of the same transaction.

VI.   The instructions were proper, and the verdict was for the right party.

HALL, J.—The court seems to have ignored the first defence set up in the answer, based upon the neglect of Melone & Epperson to notify the defendant of the failure of Sidell to pay the original note executed by him and defendant.   The defendant urges that defence upon this court and makes it necessary for us to determine whether it is maintainable.   The defence is not maintainable.   The instrument in suit is an absolute promise to pay the amount, with interest and costs, mentioned therein.   In such case no notice was required to be given to the defendant of Sidell's failure to make such payment.   *Wright v. Dyer*, 48 Mo. 526.

If Melone & Epperson obtained judgment against Sidell before a justice of the peace upon the original note, "had the transcript of the same filed in the circuit court and ordered execution thereon in the hands of the sheriff of Knox county, who, at their instance, or attorney's, seized and levied upon sufficient personal property of Sidell with which to pay it off," and the sheriff then released and abandoned the levy, as hypothetically stated in the instruction given of the court's own motion, then the defendant was not liable in this case.

The levy was, *prima facie*, a satisfaction of the judgment, and if the levy was in fact made as stated, *i. e.*, by the sheriff, at the instance of the judgment creditors, the release of it by them through their officer, the sheriff, was, as to the defendant, a satisfaction of the judgment, and a payment of the original note within the meaning of, and in compliance with, the condition of the instrument in suit.   The rule on this subject is thus stated by Mr. Freeman, in his work on Executions : "In general, so far as the rights of third persons are concerned, whether they are sureties,

or the holders of junior liens, or otherwise interested in the discharge of the writ, the levy upon goods is a satisfaction of the judgment to the extent of their value, unless plaintiff is deprived of the benefit of his levy without any fault, neglect, or indulgence on his part, or on the part of the officer."

But if, on the other hand, the acts stated, *i. e.*, the acts leading up to the levy and the making of the levy, were done, as stated by Epperson, by the defendant, with the consent of the judgment creditors, but wholly for his own benefit and at his own risk; if, in other words, the judgment was, so to speak, loaned by the judgment creditors to the defendant to be used by him in an effort to protect himself, and was so used, then the judgment creditors cannot be deemed to have made the levy or to have released it. In such case the levy was made by the defendant, was released by the defendant's officer, and the judgment creditors were not responsible therefor.

It may well be doubted whether there was sufficient evidence on which to submit the question as to whether the judgment creditors had procured or released the levy, but waiving that, it is clear that the judgment must be reversed. The plaintiff asked and the court refused to give the following instruction to the jury :

"9. If the jury believe, from the testimony, that Powell undertook to manage and conduct the collection of the judgment against Sidell alone, without the interference of Melone & Epperson, but failed in the collection thereof, then it matters not what the cause of the failure to collect the same was, he cannot plead the same as a bar in this suit."

This instruction, or its substance in some form, should have been given, so as to have submitted to the jury the question as to who procured the levy, as just explained, the defendant or the judgment creditors.

Judgment reversed and cause remanded. All concur.